FIELD, P.,
delivered the opinion of the court as follows:
William O. Winston, by will, after making sundry specific devises and bequests, of real and personal property, to his children, gave the residue of his estate, after payment of his debts, to his four daughters by name. He made no appointment of an executor, and no person applying for administration with the will annexed, it was committed to Parke Street, sheriff of Hanover county. In 1821 Street settled his administration account on the estate, before commissioner Pollard, under an order of the county court. Commissioner Pollard made his report, shewing a balance due to the estate of $270 71, besides interest, in *710 reference to which the commissioner stated that the administrator objected to making distribution of the money, because sundry suits were then pending against him. The county court received the report and ordered it to be recorded; but further ordered, that the administrator should distribute the balance reported against him amongst the creditors of his testator. This order was made on the 28th day of November, 1821.
We find, from an exhibit in the cause, that a suit wás pending in the Circuit Court of the United States at Richmond, in the name of Geo. Bayne, against Parke Street, sheriff administrator of William O. Winston, and the children of Wm. O. Winston, for the recovery of a debt claimed to be due from the testator’s estate, and that three out of seven of the children purchased their peace at the price of $800, and were dismissed *from the cause; but as to the residue of the plaintiff’s claim, the cause was retained for further prosecution against the administrator and the other legal representatives of William O. Winston, deceased. The order in reference to this partial compromise of the suit was entered on the 10th of October, 1828. What was done in the cause thereafter, or when it was determined finally, does not appear. But it is apparent, that if the $800 paid for the shares of three of the children constituted three-sevenths of the debt, and the others were indebted proportionally, it would follow that the balance of the claim, for which the estate was still liable, was $1,066 66%. This being the state of things, there was a very good reason why the residuary legatees should delay the bringing of their suit so long. Their father’s estate was largely indebted; the county court had ordered the administrator to apply the funds in his hands to the payment of the claims of the creditors, and as late as the 10th of October, 1828, we find a suit pending against the administrator and the children for the recovery of a debt not less in amount than $1,866, upon which, after applying the credit of $800, (the compromise money paid by three children,) there was a balance of $1,066 remaining due, and for the recovery of which, of the administrator and other children of,the testator, the cause was retained in court. Under these circumstances, the residuary legatees, without subjecting themselves to the imputation of sleeping upon their rights, were well justified in postponing the bringing of their suit until the debts were all either paid or until their payment could be presumed from lapse of time. Taking the 10th of October, 1828, when we find the suit pending in the Circuit Court of- the United States, as the period of time from which the twenty years is to commence running, (and this date can be assumed only upon the supposition that the further prosecution of that suit was from that date abandoned — a supposition entirely gratuitous, for there is nothing found in the cause to warrant it, either then ^or afterwards) — I say, taking the 10th of Oct’r, 1828, as the time from which the twenty years shall commence running, from after the lapse of which the debts due from William O. Winston’s estate may be presumed to have been paid — this presumption did not arise until the 10th of October, 1848. "Now, if the residuary legatees were entitled to delay the bringing of their suit until the debts were either paid or their. payment could be presumed from lapse of time, they have been over-diligent in bringing their suit, for they brought it in April, 1847, about one year and a half before the expiration of the twenty years.
The administrator filed his answer to the bill. He does not pretend that he paid the balance reported to be due on his administration account to the creditors, or to the legatees of his' testator. Nor does he pretend that the payment to either is to be presumed from lapse of time. He could not, consistently with truth, have contended for any such thing. Por it is evident, from what is said above, that the presumption of payment would not apply to the debt claimed by George Bayne, as to which the twenty years had not run out by one j’ear and a half. Nor could the presumption of payment apply to the claim of the residuary legatees; for they could have no claim until the debts were paid, or presumed to be paid. The defendant made no such defence, but attempted to screen himself under a shelter which the law had erected for the benefit of the sureties in his official bond, but not to protect him from the consequences of his delinquencies. In his answer, in reference to the plaintiffs’ claim, he says as follows: “But it will be seen that the said balance is stated to be due on the 1st day of January, 1821, and the present suit was instituted in 1847, and that any demand therefor against the estate of his testator is barred by the statute of limitations.” The statute of limitations referred to by the defendant was the act of the 8th of March, 1826, (Suppl. to R. C. of 1819, p. 260, ch. 200,) ^limiting suits on the. bonds of fiduciaries, in which their sureties are bound, but does not ■ apply to the liability which an executor, administrator or other fiduciary incurs 'independently of the bond by assuming upon himself the duties and obligations incident to the trust. Such was no doubt the opinion of the court before whom the cause was heard. That court dismissed the bill, not upon the defence of the act of limitations, but because the court was “of opinion that the claim of the plaintiff is too stale now' to be enforced in a court of equity.”
After the lapse of twenty years, a bond debt is presumed to be paid. As to claims against executors and administrators, or other fiduciaries, a demand may become too stale to be enforced in equity. But this must depend, not altogether upon the lapse of time, but upon other circumstances as well as time. It should be allowed to protect delinquents where the transaction is old, the accounts unsettled, amount sought to be recovered uncertain, depending upon *711 the testimony of witnesses who may he dead, upon vouchers lost, or where, from the death of parties, all knowledge of the true state of the accounts has passed into oblivion, and when any effort to settle and adjust the accounts might, and probably would, result in doing great injustice to the defendant. Cases of this sort are discountenanced by courts of equity. The case under consideration is not one of that character. The debt is fixed and certain. Its existence and amount is proved by the record and judgment of a court of competent jurisdiction. If it has ever been paid, the vouchers of payment would be found by the defendant amongst the papers of his .testator, and could be produced. He does not pretend that any such vouchers ever had an existence and are now lost or mislaid; on the contrary, he places his de-fence wholly upon his reference to a statute of limitations which has no application to the case.
In fine, my opinion is, that the plaintiffs’ claim is *barred, neither by lapse of time nor the statute of limitations, and that the plaintiffs have been reasonably diligent in asserting their claim, that the decree dismissing their bill was erroneous, and should be reversed with costs.
THOMPSON, J., and GIRMHR, J., concurred with FIELD, President.
Decree reversed — and decree by this court distributing the balance due among the appellants.